The fourth district appellate court of the state of Illinois has now convened the Honorable John Turner presiding. Good morning. Morning. Morning. First case this morning is in re Marriage of Shafer. And that is case number 4200099. Would counsel for the appellate please state your name for the record. Scott Sabin, Cherry Fraser and Sabin. And for appellate. Gregory Scott, your honor from Scott and Scott. Okay, thank you, Mr Sabin you may proceed. Thank you. Please the court. Council Mr Scott, I represent obviously the appellant Jackie Schaefer Sherman. This case boils down to a simple issue. I submit how can the trial court below declare a parcel of property, a marital asset and order it's listing for sale to be sold ordering it's listing for sale. When that parcel was never legally acquired by the parties and the legal owner was not a party to the proceedings. I submit it cannot. After a contested divorce trial between Jackie and Dustin Schaefer. The trial court below improperly characterize the residence located at 2111 Burberry Street as marital property. The undisputed testimony was that Diane Sherman, that's Jackie's mother, the appellant's mother was the legal entitled owner of that residence. She assumed a mortgage in her name alone on paper to the rest of the world to the bank. She owned the property located at 2111 Burberry. She agreed that the property be titled in her name because the parties could not take the property into their own name due to poor credit. Not sure if that was because it would expose the asset to other creditors of the parties or simply couldn't procure a loan, a home loan. Regardless, it is undisputed. She is the only name on the deed. Jackie had always maintained that the home belonged to her mother. Contrarily, Dustin argues that the home's a marital asset to which he has rights. Essentially, the court found he had, I guess, an equitable ownership interest in the home since he paid the monthly mortgage, in part taxes and insurance. Let me ask you about that. So, the parties to the divorce, they claim this property as far as tax purposes with them paying the taxes on it and then noting that and claiming that when they file their taxes, right? That's correct. And Ms. Sherman, she considered it their house, right? At the time, she was, yes. I mean, when you say, Your Honor, that she considered it their house, I'm not entirely certain and it wasn't followed up in trial. You know, they lived in the home. You know, she considered their home, they lived in it. Whether she considered it legally their home, that remains to be seen. She wasn't represented by counsel. She didn't get to defend the position and she wasn't the party to the proceeding. That was really not even an issue put before the court in terms of what exactly her interest is. Of course, she testified during the proceedings, right? Sure. And at that time, did she indicate anything that would suggest that she believed that this property belonged to her and that it was not something that the court should consider in terms of divvying up the property of the parties? I don't think she raised it in that manner, no. But I don't think she was asked either. And I don't think she was advocated for. I mean, she wasn't represented. She was a witness. That was not a party to the proceeding. I don't think she knew what, if any, adversarial interest would be raised or brought before the court. And this is the problem when the court took it upon itself to basically, you know, argue that, you know, it declared her in its order that they were the owners. The court wasn't, it was rather inartful. It didn't say equitable owners. That only comes up in the appellate court argument where Mr. Scott argues the same. But the word equitable interest was never, interestingly, I don't recall it being raised in the appellate court and, I'm sorry, in the trial court. And she was never really, I mean, she did for 10 years. I mean, her daughter and son-in-law lived in that home. And so was it improper, illegal for them to claim the mortgage interest on their taxes? That's a good question. I'm not an accountant. I don't know if what the law is regarding on taking interest deductions for mortgages that are paid or not, you know, on behalf of one party or another. I don't know the answer to that. I would think you have to be a legal owner, title owner, to take those deductions. It should come as no surprise that the parties are, I don't know. I mean, I think the evidence was that they hadn't paid their taxes in a long time. And I don't know that they were necessarily following good accounting practices either. It's a very good question. But just because they did it didn't mean it was done correctly. And so in 2013, Ms. Shuman actually listed the house for sale at the request of the parties, right? Yeah, she agreed to do it at that time. And then years later and after a torturous divorce for whatever, you know, after she had also had to pay a significant sum of money. She was called upon when the parties went into default to pay the mortgage. She was certainly liable then. You know, other creditors of the parties certainly couldn't reach that asset because it was titled in her name. But, you know, at the close of the divorce, you know, things had changed since 2013. And she didn't cooperate and didn't participate in the sale of the home, the listing and or sale of the home. And so basically, you know, my first argument, Your Honors, is that the court didn't have subject matter jurisdiction. And in that the Dissolution of Marriage Act confers jurisdiction on the court to dispose of property acquired by the parties. This house was not acquired by the parties. If you look at 750 ILS 503, the court is charged with dividing the marital assets acquired after the marriage. And I submit that this asset was not acquired by either party. It was legally owned and titled by Diane Sherman. She was a necessary and indispensable party to this proceeding. She was not included. The law is pretty clear that when a necessary and indispensable party to a proceeding in real estate such as this hasn't been included, that it's required. Why didn't you include her? I was not the trial attorney, but they had always taken the position that it wasn't a marital asset. And the court on its own said that based on the testimony presented before the court, that they in fact were the marital owners. And if that was the position that Dustin was going to take, he could have brought them in or should have brought them in as a necessary and indispensable party and did not. He too elected to throw the dice. And the judge was without jurisdiction to award a piece of property that neither party had an interest in and did not include them in the proceeding. So now I think the remedy is basically to remand the case to be decided, to divide, to determine that that was not a marital asset, let alone non-marital. It's not part of the equation at all. And divide the property, basically debt at this point. And if Dustin Schaefer wants to profess some interest in this property, he certainly can bring a separate proceeding and include Ms. Schaefer and Diane Sherman in a partition proceeding to determine what those rights are. Mr. Sabin, if that is the remedy that you're suggesting is appropriate here, what happens to the rest of the judgment relative to the court's order regarding property? I think the only thing left is debt. And I think that the court at that point can, you know, there was not a, I don't believe, I don't know, I don't recall if it was a 50-50 division of the debt. But I mean, I think it would open up the courts to decide how the debt is apportioned. I mean, I think it would be free to do that because it doesn't have this asset within the estate to consider. A significant portion of sale proceeds was relegated to the GAL fees. That would have to also be, I guess, reapportioned and readdressed because payment was contingent upon the sale of the real estate. So can I ask a question that relates more towards, more to the second two issues that you raised? Whether or not the trial court could actually order the parties to sell the real estate when the title owner was somebody who is not a party. And then the last issue was whether or not your client could be held in contempt of court under the court's order here. Did the parties and the court ever address how this could be done from a mechanical standpoint? I mean, can a realtor list a piece of property without the title owner's consent? How does this actually happen? I've never heard of anything like this before. So I'm just curious if the parties and the court discussed this, how does this get done? I don't know that it was adequately addressed by the court. I think at times the issue had been raised, maybe an argument to the court. The court basically acknowledged and said, I know I don't have jurisdiction over Diane Sherman. But any argument ceased right there and says, I'm ordering them to sell their interest. Well, the court in its head probably made a distinction between an equitable interest and a legal interest, but that wasn't really litigated. And I would submit a case. There was a case I cited that dealt exactly with the issue. It was Ellis Realty versus Chappellisky. In that case, a seller enlisted the services of a realtor to sell property. He only had a beneficial interest, much as Mr. Scott argues Mr. Schaefer had here. And at the time when he was called upon to sell the property, the realtor had procured a ready, willing and able buyer. He could not produce a clear title. And when he couldn't transfer the property, the purchaser, or I'm sorry, the agent, the real estate agent filed suit to collect its commission. And the seller was ordered to pay the commission in that case, even though he couldn't. I mean, he engaged the services of the realtor in good faith who listed the property, sold it. But obviously, as a condition of selling property, you have to confer the title. And that couldn't happen here. And it can't happen in this case. And that goes to the whole idea of holding Ms. Schaefer in contempt. How can she be held in contempt when she can't legally sell a parcel of property that she has no legal title or interest to? It's the proverbial catch-22. Puts her in a position where she would have to engage the services of a realtor, knowing that she couldn't give good title. Maybe Mr. Scott can answer the question of how this actually could be accomplished. In other words, forcing a non-party to sell the real estate. In regards to the contempt issue, I'm looking at the court's judgment from which the contempt then came about. And in regards to the residents, it says the parties shall each cooperate with the preparation and sale of the Barbary residents. And then there was a contempt petition filed. And there was a lot that was raised in the contempt petition. I don't know how many numbered paragraphs, but it was A through R. But paragraph D alleged that your client failed to coordinate with Dustin to place the Barbary residents for sale and informed Dustin she was never going to sell the residents. And then looking at the testimony at the time of the contempt hearing, your client testified that she asked her mother if she was planning to sell the house. And then Mr. Scott asked her, you're aware that Dustin has asked you to list the property for sale? And she says, yes. Or I mean, yes, he sent me a list of realtors or something of that source. And you wouldn't agree to any of those realtors, would you answer? I didn't disagree or agree to any of them. Question, you just didn't respond, answer no. So that's the testimony that related to the contempt petition. So is that contempt? And if not, why not? Is that contempt? Let's assume that it is. My understanding of civil contempt is that you must have the ability to purge yourself. And in this case, I don't know how she can purge herself by agreeing to list property that she doesn't have title to. I mean, it wouldn't be any more appropriate for me to go and list a stranger's property for sale with the realtor and engage their services and get them caught up. And so, yes, I agree to sell my home listed with this realtor and then not be able to convey it. And maybe I could have adduced more evidence about whether she attempted to engage the services of a realtor or even brought a realtor in. But the reality of it is I don't even know how one could purge themselves of this type of contempt and agreeing to the listing and sale of property that they do not have a legal ownership interest in. Counsel, did the trial court ever assess a penalty on its contempt finding? Interestingly, it held her in contempt. Justice Harris acknowledged there were a great number of other items that were focused upon, and a punishment was ultimately... She was ordered to pay attorney's fees for, I think, to the tune of some $3,000. Paying attorney fees is not a punishment. That was because he had to bring the contempt. You're right. It's not a punishment, but it was a consequence of her failure to abide by the court's order. Doesn't Supreme Court rule and case law say that if the trial court has made a contempt finding, but not assessed a punishment or penalty of some kind, then the order is not final and appealable? I'm not going to answer yes or no. I don't know the answer to that. I will defer to Your Honor. That may very well be. I suspect the way, Your Honor, I viewed this is there were many, many matters of contempt brought before the court. Some issues, there was a finding of contempt. Others, there were not. Collectively, attorney's fees were awarded, and there was a purge date given that kind of come and went and probably got subsumed in other issues. But you're bringing forth that possibility. It's certainly a possibility. I can't argue otherwise. And to answer your question, I do not believe she was punished at that point, because once this issue was also on appeal, the judge really, and rightfully so, just avoided it, and it wasn't within the jurisdiction of the court at that point. But basically, that's my argument. I believe that Diane Sherman was a necessary and indispensable party to the proceeding, should have been included. The fact that she wasn't, I think going forward, if it is remanded, then it would really be Dustin's responsibility to either implead her or bring a separate partition action. Thank you, counsel. You're out of time, but you will have rebuttal. Thank you, Mr. Scott. May it please the court, counsel. I disagree with Mr. Saban's analysis. What the court divided was the party's interest in the marital residence. It was never alleged or there was no position taken that they had legal title. They have a legal interest, and I gave the court two cases, the Cole case, I think the Jones case, which clearly state that an equitable interest in property can be enforced against the legal title holder. And there was never a question, but that this home was the property of Dustin and Jackie Schaefer. In fact, Ms. Sherman testified. If you recall my brief, there was a there was an exhibit 59. There was a very exhaustive communication from Ms. Sherman, where she acknowledged that the house was really the party's residence, that she wanted them to get a mortgage and get it out of her name. And then when she was testifying, she acknowledged that the house had to be divided and the mortgage addressed in the dissolution. So what the court did is the court said, OK, these people have an equitable interest. So I'm dividing that equitable interest. And Justice Harris, you asked the question, how does that physically happen. So what a court did is the court says your equitable interest in the property is divided as follows. I direct you to sell that. How does a person sell that when they don't have legal title. The methodology is to first go to the legal title holder who has admitted in open court that it's their property. Then if that person in fact refuses to cooperate enlisting this with a realtor, then the process is that the parties are obligated under the court order to sell their interest. The only methodology for doing that is to institute a partition suit. There is a cooperation factor that this court ordered Jackie to do. She has to cooperate to get that sold. So the court envisioned because of the fact I would think at least I would envision that Miss Sherman would have signed it as well because she did in 2013. When these parties wanted to sell this property in 2013, they came to Miss Sherman and they said, hey, we're going to sell the property and she executed the listing agreement. The parties put the down payment on this house. The parties paid for the mortgage up until the time that they separated. The parties, as Justice Holder White acknowledged, they deducted the interest and the taxes. The parties had homeowners insurance with all three names on it. So clearly, if they go to court, they will be able to prove an equitable title or an equitable interest, which is a legal interest. If you had a contract for deed, you don't have legal title, but you have an equitable contractual right to enforce against the legal title holder. So they have the ability to do that. What the court divided is the court divided their interest, which is a substantial equitable interest in this property. Mr. Scott, and I acknowledge the record has plenty of evidence of testimony in regards to the parties equitable interest in the property. But it appears the record also demonstrates that the legal title owner is Miss Sherman, and it still begs the question, how can the court order the property sold without Miss Sherman being a party to the action? And then the second question is, how did Petitioner, how was she in contempt of court by her actions or inaction? And maybe you could answer the second question first. She apparently asked her mother if she was planning to sell the home. What more did she need to do in order to be in compliance with the court's order? Well, in my opinion, your honor, she needed to get a listing agreement from the realtor that they agreed upon, present that to her mother and ask her to sign it. If she refused to do that, then she would have to institute with Dustin actions to force compliance by her mother to sell it, to sell their interest. And they have to, she can't just sit back and say, oh, I can't sell my interest because my mom won't list the property. I can walk away from my equitable interest. That's not what the court ordered her to do. The court ordered her to sell their interest in the property. So that means that she has to take affirmative efforts to try and sell that. And it's not just saying, mom, are you going to list the property? Because mom will say, oh, no, I'm not going to do that. I'll defeat the equitable interest of the parties in the property because I'm just not going to list it. And they're actually acting in concert. In fact, her whole appeal seems to be acting in concert with her mother to attempt to remove the equitable equity that the parties have in this residence and say, well, wait a minute. You know, we can't do anything because, you know, mom is the legal title holder, even though there is clearly an equitable interest that is enforceable. Would a realtor accept a property for listing without the actual permission of the legal title owner? I would say probably not, but that would require then the parties to become a owner of some legal interest that would enable them to sell it, which would happen through the partition proceedings. And in fact, what limited partition proceedings work I've done, and I must admit to the court, it's been a long time, but the one of the facets of that is an order of a court and partition. And to order the sale of the can't be divided. I'm sorry to interrupt. If the order can't be complied with, can an individual still be held in contempt. In other words, if a provision is such that the petitioner could not be in compliance here. If cooperation would necessitate the property be listed with a realtor and a realtor wouldn't accept the listing without the legal title owners permission. Is that a provision of the judgment that can't be complied with. So should petitioner be held in contempt for that. Well, I believe that petitioner should be held in contempt of that and was probably held in contempt because she would not cooperate with Dustin to take the steps necessary to be able to list with a realtor. So you have to, it's going to take a two step process. It's going to take a process of going and forcing the mother to acknowledge their interest legally. And then once that is acknowledged to have the property sold and what, you know, the cooperation requires taking more action than just saying, Oh, mom, are you going to sign a listing agreement. If she says no, then they have a procedure to enforce their equitable interest. And she took no action didn't respond wouldn't even communicate with him. So, yes, she's in contempt for not cooperating. Now could she physically list the property until she got first step completed. I don't think so. I don't think Dustin could, but I think they're going to have to go through the process of saying to her mother, Diane. Look, we're going to have to take this step to force the sale of our interest, and then follow through with that. That's where the contempt was. So Mr. Scott, basically, are you saying that she skirted her responsibility and that she never asked her mother to list the property never asked her mother to sign an agreement never sought a realtor to even be able to approach her mother about selling the property. Yes, Your Honor. And I think that it is it when her mom said she didn't have an intention of listing the property. She took no further action to enforce the rights of the parties. And do we know whether or not Miss Sherman actually be willing to sell the property I guess you know saying I don't intend to versus if I'm asked because of a court order, and the testimony that came in to actually listed and sell it. Will I do it that seems to be two different things. Do we know the only evidence we have judge is that the justice is that the contempt hearing. When I asked Miss what her name is now Sherman as well. Miss Jackie Sherman. I, what she had done. She said she asked her mom and her mom said no, there's no further evidence of that. And there's no without any cooperation from Jackie Dustin would have to bring an independent action. And that has not been accomplished yet. And as far as the contempt I mean the judge entered a purge order and said that she could comply purge herself of contempt by complying with the order. Are you aware of any other me was there. I think Mr. Saban mentioned something about a purge date. Did anything. Your Honor, as far as the record, the judge lumped, I guess, or included many items of contempt, and then the purge was was compliance with court orders. And then a purge date was was set to make sure that she complied by that date. And to my recollection, there was no further evidence or any type of indication that she had not purged herself of the contempt. Mr. Scott, the problem with that is the court never said either purge yourself by cooperate by cooperating by say within the next 21 days or guess what, you're going to jail. The court you said, purge yourself. So there was no punishment so I'm back to the question that I asked before the opposing counsel, when there's no punishment. The order is not final and appealable and that's the problem here you have a response to that. Your Honor. I would agree there was no specific punishment for each element of the contempt. I guess the only way that it would become final is the blanket purge requirement as being a punishment for all of that. I agree with you, it would have been clear for the court to say, ma'am, you are Miss Sherman you need to do 123 if you don't do it by a certain date. That's it, counsel, it wouldn't have just been better it was required. Otherwise, you were up here on appeal. And this court, how can we rule, because we don't even know what the court did. You can't just say as a trial judge, you can purge yourself by cooperating. If there is no punishment. Now if there had been a punishment, maybe we wouldn't be here, because maybe something would have occurred, but it didn't. So we don't have a final and appealable order so at least as to the contempt. I don't believe this court to make a ruling I think we have to dismiss that particular portion of the appeal your response, please. Oh, Your Honor, I, I would tend to agree with you that that would probably be the correct ruling in light of the Supreme Court ruling. Yes, and then if it did go back to the court in the court actually does put a punishment on the contempt finding. Maybe this whole problem gets resolved. Possibly. Yes, sure. I have nothing further. Thank you. Thank you, Mr. Scott. Any rebuttal. So, so I guess just in response to that, Your Honor. Well, perhaps she may not be held in contempt or I don't see how the issue is resolved based on the first argument that the court didn't have jurisdiction to to to award a parcel of property that that I contend was not rightfully before the court, the whole issue. So I think that Mr. Scott's argument is that she was supposed to cooperate, that would mean agree with her ex to a realtor. Now we've got two names on with the, we're going to employ this realtor to sell this property. Then they go to Miss, Mr Sherman, and ask her. Will you join us that way the realtors cover the equitable interest have signed on to the realty agreement. So as a legal title. And that would be the cooperation I think the court was wanting from your client. What any response to that. Well, I think you're putting. I think the court is putting this Sherman in an untenable position to do something which she actually appeal. I mean, that's her answer to the purge is she took this up on appeal. She because she didn't believe she could rightfully even engage the services of a realtor. I don't know how you can legally contract with someone to sell a parcel of property that you don't have the legal right to sell. So I think you're almost putting the cart before the horse in these parties have nothing but debt, and to send it back to litigate whether she cooperated or not. I don't know how she could have cooperated and even if she did. Her understanding is that her mother was not going to sell the property. Her mother. By that time in 2017. You know there was additional debt that she had paid on behalf of the property, and let me ask you this. Is it your client's position that all those mortgage payments over the years were made and were intended to be gifts. I don't know that they were gifts or not, but but but but what I can tell you your honor is they asked her. They didn't take joint title of the asset with her they asked her to take ownership of the home and her sole name. She assumed all of the risk. And maybe that's maybe that is a rent payment. I mean I haven't flushed that out I haven't litigated it but that's certainly a possibility. When a contract for deed. If you don't complete the contract. If you don't pay it all you don't get the deed. You could you could say it's akin to this and I think her counsel Mr page argued that. So you know what she's taking on all of the liability of this home. She, if they had failed to start making payments in 2007 or eight, it would have been on her. And so, I think to suggest that she got me back up this whole argument about equity and equitable interest is really raised on appeal. The courts doesn't refer to an equitable interest they just say whatever interests. I mean take a close look at the record, I don't see equity being argued at all. And I cite in my reply brief. Mr Scott had talked about constructive trust, you know again equitable interest these types of things. They all have to be properly pled. Miss Diane Sherman was a witness to the proceedings, he was not a party. Her interests are going to be different than, than her daughters and her son in law's. And if they, if Miss Sherman was of the opinion it was not a marital asset. Could she have intervened. She could have I suppose, I mean that that didn't come up. The court could have even directed the parties to say bring her in. I think has an obligation quite honestly. I mean he knew what he was doing. And he put her in a catch 22 to have this woman agreed to put the home up for sale. By listing it with an agent who she couldn't properly contract that the case I cite the Celeste case. I mean, basically you're they're taking on additional debt, if they contract with the realtor and don't have the ability to convey a clean title. They don't have the ability to clean any title, quite frankly. And all I'm saying is at this juncture because neither party brought them in there. The appropriate remedy is for either one of them to bring a partition action, if Dustin believes that this was a, that he has an ownership interest that he can bring a partition action to determine what it is. I don't think I mean the court, Mr. Peter, and basically advanced and argued a theory that wasn't really even brought before it until arguments at the very end. Okay, Mr. saving you're out of time. Thank you for your argument. Thank you as well Mr. Scott. The case is submitted and the court will now stand in recess.